HERRMAN v. LELAND.        (No. 5966.)

(Supreme Court, Appellate Division, First Department. July 10, 1914.)

1. TRIAL (§ 333*)—VERDICT—AMOUNT ALLOWED.
        Where, in an action for services, plaintiff prepared and rendered a formal account to defendant, charging 10 per cent. on moneys received and paid out, and rendered no services after the tender of the account, a verdict, awarding him $2,070 more than the amount of the account, was not justified.

        [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 784, 786; Dec. Dig. § 333.*]

2. NEW TRIAL (§ 162*)—EXCESSIVE VERDICT.
        Where plaintiff sued for services after rendering an account to defendant therefor, and recovered a verdict for much more than the amount claimed in the account, the trial justice was justified in holding that the verdict was excessive, but should have granted a new trial, conditional on plaintiff's accepting a judgment for the amount of his bill.

        [Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 324-329; Dec. Dig. § 162.*]

3. INTEREST (§ 19*)—RIGHT TO INTEREST—UNLIQUIDATED DEMAND.
        Where plaintiff sued on an unliquidated demand for services rendered, he was not entitled to recover interest.

        [Ed. Note.—For other cases, see Interest, Cent. Dig. §§ 35-40; Dec. Dig. § 19.*]

4. COSTS (§ 164*)—EXTRA ALLOWANCE.
        Where an action for services was neither difficult nor extraordinary, plaintiff was not entitled to an extra allowance of costs.

        [Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 620-636; Dec. Dig. § 164.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Action by James S. Herrman against Francis L. Leland. From an order setting aside a verdict in favor of plaintiff and granting a new trial, and from an order denying defendant's motion to add interest to the verdict, and denying his motion for an additional allowance, plaintiff appeals. Modified and affirmed.

See, also, 148 N. Y. Supp. 1120.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, DOWLING, and HOTCHKISS, JJ.

Richard T. Greene, of New York City (Francis R. Stoddard, Jr., of New York City, on the brief), for appellant.

L. Laflin Kellogg, of New York City, for respondent.

LAUGHLIN, J. This is an action to recover for services on a quantum meruit basis. The plaintiff was engaged in the real estate business and in building construction, and the defendant was president of the New York County National Bank. In the month of October, 1908, the Buckley Realty Construction Company was erecting an apartment house known as the "Verona" at Sixty-Fourth street and Madison avenue in the borough of Manhattan, and was engaged in the performance of other contracts for building the Long Island approach to the Queensborough Bridge, for certain building or construction work at the Metropolitan Museum of Art in Central Park, and at West Point, N. Y.; and was indebted to said bank in the sum of $50,000 on notes for moneys loaned. The notes for this indebtedness originally ran to the bank, but notes running to one Crawford, a clerk in the bank, were substituted therefor, and he held the notes, together with collateral security, consisting, among other things, of a chattel mortgage on the plant of the Buckley Company at its office and distributed at the various points where it was doing contract work and at a lot on Seventy-First street, New York. The Buckley Company had been desirous of obtaining a further loan of $20,000 from the bank, and the defendant employed the plaintiff to investigate the affairs of the Buckley Company generally, and particularly with respect to its contract work in the erection of the Verona, and to report with respect to the advisability of granting the additional loan, with the result that the additional loan was granted. The Buckley Company was financially embarrassed, and evidently it was feared that it might go into bankruptcy. The defendant determined to have the note or notes representing this indebtedness run to a third party not connected with the bank, evidently for the purpose of having it appear, in the event of bankruptcy of the debtor, that they were given and the collateral security was held for a new indebtedness, and not for the renewal of antecedent indebtedness. The defendant determined to assist the Buckley Company in paying off the old indebtedness by incurring a new indebtedness running to the plaintiff, and accordingly he employed the plaintiff to hold the note or notes and securities, and arranged to have the bank, of which he was president, loan $80,000 to the plaintiff on the latter's note. That was done, and the amount was

credited to the plaintiff's account in the bank, and the plaintiff drew a check thereon to the order of the Buckley Company for $70,000, with which the Buckley Company paid the note or notes held by Crawford and redeemed the securities, and procured new securities of like nature running to the plaintiff as security for a note or notes executed to him in that amount.

[1] The plaintiff claims, and gave evidence tending to show, that he rendered certain services to the defendant in originally obtaining the securities held by Crawford, and in assisting in the purchase of a second mortgage for $210,000 on the Verona, but with respect to the second mortgage it appears that the lowest figure at which the plaintiff was able to procure it was $200,000; whereas, the defendant subsequently negotiated the purchase himself at $190,000. The defendant thereafter foreclosed this mortgage and purchased the Verona on the foreclosure sale. The uncontroverted evidence shows that the plaintiff rendered substantial services to the defendant in selling the property covered by the chattel mortgage, and under a contract of employment to supervise the completion of the Verona and to supervise work performed by the defendant in the execution of the Buckley Company's contracts, which apparently were taken over by the defendant. In the completion of the Verona, the plaintiff performed the services both of superintendent and architect, and under his supervision the sum of $128,106.55 was expended in completing it and in the performance of the other contract work, to which reference has been made, and on the sale of the mortgaged property he collected the sum of $21,703.24. After the rendition of these services, and on the 17th day of November, 1909, the plaintiff prepared and rendered to the defendant a formal account, by which he claimed that the defendant was indebted to him for services rendered in completing the Verona and all services incident thereto and for services rendered in the execution of the other Buckley Company contracts, and in selling the property covered by the chattel mortgage and collecting therefor, in the sum of $14,980.98, which the account showed to be 10 per cent. of the total amount so disbursed and collected. The plaintiff rendered no services for the defendant since the date of that bill. Upon the trial, in addition to the items included in the bill, the plaintiff claimed for services in assisting in purchasing the second mortgage on the Verona in "negotiating the sale of" a parcel of real estate on Seventy-First street held as security for the Buckley Company's notes, in conducting negotiations with the holder of the first mortgage on the Verona with respect to the payment thereof, and certain negotiations with subcontractors on the Verona, and testified that these items were not embraced in the bill rendered. It is fairly to be inferred, however, that he intended to include in the bill any claim he had for services with respect to the securities held as collateral to the Buckley Company notes, and for negotiations with the subcontractors. It is likewise clear that he intended that the bill should embrace his entire claim against the defendant, and that he did not intend to make a separate charge for services in the purchase of the second mortgage, or in the negotiations with the holder of the first mortgage. The reasonable

inference from the evidence is that in charging the defendant for his services on the basis of 10 per cent. of the amount collected and disbursed, he treated himself with great liberality if he did not intend that it should be in full for all services to which reference has been made. The verdict of the jury was for $2,070 more than the amount of the bill. Neither counsel has been able to point to evidence showing that plaintiff's services were precisely of the value determined by the jury; but there is opinion evidence in the case tending to show that his services were worth more than the amount of the verdict.

[2-4] We are of opinion that the learned trial justice was justified in determining that the verdict was excessive; but we think a new trial should not have been granted, provided the plaintiff was willing to accept the amount for which he rendered the bill. The claim was not liquidated, and therefore the plaintiff was not entitled to interest. The case was neither difficult nor extraordinary, and therefore there was no error in denying the motion for an additional allowance. Although the bill rendered by the plaintiff was rather high, since the defendant had had the benefit of his services over 3½ years, and is not liable for interest, we think substantial justice would have been done if the trial court had set the verdict aside and granted a new trial, unless the plaintiff stipulated to reduce the recovery to the amount of the bill.

It follows, therefore, that the order setting aside the verdict and granting a new trial should be modified without costs, by setting aside the verdict and granting a new trial only in the event that plaintiff shall refuse to stipulate to reduce the recovery to the sum of $14,980.98, and if he shall so stipulate, the recovery is reduced accordingly, and the motion to set aside the verdict denied, without costs; and the orders denying the motions to add interest to the verdict and for an additional allowance are affirmed, with costs. All concur.